IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NIKIA EDWARDS, *on behalf of herself and others similarly situated*, *et al.*,
    Plaintiffs,

v.

OPTIMA HEALTH PLAN, *et al.*,
    Defendants.

Civil Action No. 2:20CV192 (RCY)

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act ("Motion for Conditional Certification") (ECF No. 25). Plaintiff Nikia Edwards and opt-in plaintiffs Natalie Harris, Andrea Andaluz, and Edna Preau-Grier[1] (collectively, "Plaintiffs") seek to have the Court conditionally certify this action as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and authorize notice of the collective action and the opportunity to opt-in to putative class members. (Pls.' Mem. Supp., ECF No. 26 at 4-5.) Plaintiffs allege that Defendants Optima Health Plan and Sentara Health Plans, Inc. (collectively, "Defendants") violated the FLSA by classifying Plaintiffs and other putative class members as exempt from the Act's minimum wage and maximum hour requirements, and that they are "similarly situated" to other "Care Management Employees" employed by the Defendants. (*Id.* at 1.) Defendants oppose the Motion. (Defs. Opp'n, ECF No. 28.) The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion for Conditional Certification

---

[1] This opt-in Plaintiff is referred to as "Edna Grier" in the notice of consent to join the lawsuit, but "Edna Preau-Grier" in her declaration.

will be GRANTED, and an Order setting deadlines, authorizing notice, and requiring the parties to confer to establish a joint notice will issue.

## I. BACKGROUND[2]

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, in which the lead Plaintiff asserts a claim against her former employer for unpaid overtime, purportedly on behalf of herself and others similarly situated. (Am. Compl., ECF No. 21.) Defendant Optima Health Plan is a Virginia corporation that provides health insurance coverage and is therefore involved in managing health insurance plans, including reviewing and approving benefit requests and assisting customers with selecting and accessing health care. Sentara is a Virginia-based healthcare provider that owns and operates numerous hospitals and nursing facilities throughout the Commonwealth of Virginia.[3] Plaintiffs are former employees of Optima. Lead Plaintiff Nikia Edwards was employed by Optima from July 2018 to November 2018, and claims she was referred to by multiple titles during her tenure, including Behavioral Health Care Coordinator, Utilization Review Manager, and Care Coordinator, despite the fact that her primary job duties were consistent. (Edwards Decl., ECF No. 26-2 ¶ 3.) Opt-in Plaintiff Edna Preau-Grier was employed by Optima from September 2017 to August 2018, and was referred to as Care Coordinator, Integrated Care Manager, and RN LTSS Care Coordinator. (Preau-Grier Decl., ECF No. 26-3 ¶ 3.) Opt-in Plaintiff Andrea Andaluz was employed by Optima from September 2017 to March 2019, and was referred to alternatively as Care Coordinator and Integrated Care Manager. (Andaluz Decl., ECF No. 26-4 ¶ 3.) Opt-in Plaintiff Natalie Harris was employed by Optima from June 2018 to December 2018, and was referred to as Care Coordinator,

---

[2] The Court cautions that the facts are recited here for the limited purpose of deciding the instant Motion for Conditional Certification. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.
[3] For ease of reference, the Defendants will be collectively referred to as "Optima" or "Defendants."

Behavioral Health Care Coordinator, and Utilization Review Manager. (Harris Decl., ECF No. 26-4 ¶ 3.)

In this action, Plaintiffs claim that they were each "Care Management Employees" at Optima, and that they and other "Care Management Employees" were subjected to a common policy through which they were classified as exempt from the wage and hour provisions of the FLSA. (Pls.' Mem. Supp. at 1.) Plaintiffs assert that such classification violated the FLSA because no statutory exemptions applied due to the lack of discretion that "Care Management Employees" were afforded and the nature of their work. (*Id.* at 2-4.) Defendants reject the "Care Management Employee" classification put forward by the Plaintiffs, arguing that Plaintiffs' proposed class is not reflective of any company practice and consists of hundreds of employees doing completely different jobs. (Defs.' Opp'n at 1-3.) Defendants insist that the named Plaintiffs were properly classified as exempt. (*Id.* at 1.)

The original complaint in this case was filed by the Lead Plaintiff on April 16, 2020, after which point three additional named Plaintiffs consented to joining the complaint. (ECF Nos. 1, 2, 18.) Defendants filed a joint answer on June 3, 2020. (ECF No. 3.) On July 24, 2020, Plaintiffs filed an amended complaint that revised the description of job positions and duties claimed to be part of the class. (ECF No. 21.) Defendants filed an answer to the amended complaint on August 6, 2020. (ECF No. 27.) The instant motion was filed on August 3, 2020, and it became ripe for decision with Plaintiffs' Reply on September 11, 2020. (ECF No. 31.) The case was reassigned to the undersigned on November 24, 2020.

## II. MOTION FOR CONDITIONAL CERTIFICATION

On August 3, 2020, lead Plaintiff Nikia Edwards filed a Motion for Step-One Notice Pursuant to the Fair Labor Standards Act ("FLSA"). (ECF No. 25.) Plaintiffs seek to have the Court

conditionally certify a collective action under the FLSA and authorize notice to potential plaintiffs of the opportunity to opt-in to the collective action. (Pls.' Mem. Supp. at 4-5.)

Plaintiffs seek conditional certification of a collective action consisting of: "All individuals employed by Defendant[s][4] as Care Management Employees in the last three years who were paid a salary and were classified as exempt from overtime." (*Id.* at 4.) Plaintiffs describe "Care Management Employees" as "the employees that actually produce the managed care services that Defendant provides to its customers." (*Id.* at 1.) Plaintiffs define the putative class members' duties as "non-managerial case management and utilization review services," with job duties including data collection, data entry, utilization management, care coordination, and plan education, but not involving clinical care. (*Id.* at 2-3.) Plaintiffs provided a non-exclusive list of job titles they claim fall within the "Care Management Employee" class,[5] but disclaimed "Clinical Claims Reviewers" from the class. (Pls. Reply, ECF No. 31 at 2.) Plaintiffs also excluded "all individuals who were eligible to participate in the settlement of *Brunty v. Optima Health Plan, et al.*, Case No. 2:19-cv-255." (Am. Compl. ¶ 51.) Plaintiffs argue that all of the employees in the putative class are similarly situated in that they did not exercise discretion or provide care to members, but rather were strictly bound to applying Defendants' guidelines and procedures, and thus were misclassified as exempt from the FLSA's wage and hour provisions. (Pls.' Mem. Supp. at 3-4.)

Plaintiffs seek judicial authorization of a notice regime to potential plaintiffs and an order requiring Defendants to "disclose the names, job title[s], start and end dates, last known addresses, e-mail addresses, and telephone numbers of the Putative Class Members" in electronic format within

---

[4] Plaintiffs refer to the Defendants collectively as "Defendant" in their briefs. (*See* Pls.' Mem. Supp. at 1 n. 1.)
[5] "Care Coordinator," "Behavioral Health Care Coordinator," "RN Care Coordinator," "Care Coordinator – Behavioral Health & UM," "Pre-Authorization Coordinator," "Transition Care Coordinator," "Integrated Care Manager," "Integrated Case Manager," and "RN Case Manager." (Pls.' Mem. Supp. at 2.) Plaintiffs allegedly held some, but not all, of these job titles. (*Id.*) Plaintiffs also provided an excerpt from the job website Glassdoor which includes job descriptions and qualifications of various jobs at Optima. (Pls.' Ex. A, ECF No 26-1.)

4

three days of entry of the order. (*Id.* at 11.) Plaintiffs have drafted a proposed notice letter that they request that the Court adopt, (ECF No. 26-6), and seek a sixty-day opt-in period from the date the notice letter is mailed. (Pls.' Mem. Supp. at 11.) Plaintiffs also seek authorization to send the notice letter by mail, e-mail, and text message, with a reminder message to be sent thirty days after the initial notice. (*Id.*)

Defendants strenuously oppose conditional certification of a collective action, characterizing Plaintiffs' motion as a "massive fishing (and settlement) expedition" based on a manufactured and overbroad class, which should be denied due to insufficient support for the contention that such putative class and the named Plaintiffs are "similarly situated". (Defs. Opp'n at 1-5.) If notice is granted, the Defendants request that the Court "require the parties to meet and confer to adopt a notice form substantially equivalent to that which they agreed in the *Brunty* litigation." (*Id.* at 30 n. 10.)

### III. DISCUSSION

**A. Legal Background**

The Fair Labor Standards Act provides for collective actions to enforce its provisions:

An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, the requirements for a collective action under the FLSA are (1) that the plaintiff and the proposed class are "similarly situated," and (2) that class members consent to joining the action. *Id.* A collective action under the FLSA is distinct from a class action under Rule 23. On one hand, the requirements for certification are less onerous: plaintiffs need only demonstrate that they are "similarly situated." On the other hand, plaintiffs in a FLSA collective action must affirmatively opt-in to the lawsuit. *See* 1 Laurie E. Leader, Wages and Hours: Law & Practice § 9.02 (1990). The collective action provision serves the purpose of conserving judicial resources by

5

allowing for the resolution of common issues of law and fact in one proceeding. *McNeil v. Faneuil, Inc.*, 2016 WL 11673838, at *2 (E.D. Va. 2016) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

District courts have the discretion to conditionally certify a collective action under § 216(b) and to authorize and manage notice to prospective class members. *See Hoffmann-La Roche*, 493 U.S. at 169-71. Many district courts apply a two-step approach to certifying a collective action. First, at step one, the Court decides whether to conditionally certify the class and authorize notice to those who are "similarly situated." *McNeil*, 2016 WL 11673838, at *3 (citations omitted). Then, after discovery concludes, step two commences if the defendant challenges the certification of the plaintiff and putative class members as similarly situated, at which point the plaintiff must satisfy a higher burden of proof. *See Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831-32 (E.D. Va. 2008) (citations omitted). The bar at step one is much easier to satisfy, with courts characterizing the standard as "fairly lenient" and requiring production of only "minimal evidence." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)); *McNeil*, 2016 WL 11673838, at *3. At this stage, the Court does not need to resolve factual disputes or decide substantive issues. *McNeil*, 2016 WL 11673838, at *3 (citing *Hargrove v. Ryla Teleservices, Inc.*, 2012 WL 489216, at *9 (E.D. Va. 2012)). The Court has the discretion to authorize and manage the notice sent to potential plaintiffs, but must appear neutral in the notice. *Hoffmann-La Roche*, 493 U.S. at 174 ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action").

Plaintiffs seeking certification must demonstrate that the plaintiff and putative class are "similarly situated," which is a low bar at step one. The Fourth Circuit has not elaborated on this standard. *See Yerby v. City of Richmond*, 2020 WL 602268, at *2-*3 (E.D. Va. 2020); *Choimbol*, 475 F. Supp. 2d at 562. District courts have generally found that the primary focus at step one is on legal

issues, and that the plaintiffs' and prospective class members' circumstances do not need to be factually identical. *See Choimbol*, 475 F. Supp. 2d at 563 (citing district court cases from across the Fourth Circuit). The key inquiry is whether the plaintiff and potential plaintiffs "'were victims of a common plan or policy' that violated FLSA." *Yerby*, 2020 WL 602268, at *3 (quoting *Meeker v. Medical Transport, LLC*, 2015 WL 1518919, at *3 (E.D. Va. 2015)). Accordingly, minimal factual support for a similarly situated finding is required, but the Court should be cautious to avoid authorizing a "fishing expedition" or unduly burdening the defendants. *See Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 283 (S.D.N.Y. 2019) (citations omitted). Moreover, "[i]n determining whether to conditionally certify a class, 'the inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members.'" *McNeil*, 2016 WL 11673838, at *2 (quoting *Houston*, 591 F. Supp. 2d at 832).

The plaintiff bears the burden to establish that she is similarly situated to the prospective class members. *Houston*, 591 F. Supp. 2d. at 832 (citation omitted). Ultimately, the district court has discretion to determine whether the facts warrant conditional certification of a collective action. *McNeil*, 2016 WL 11673838, at *3 (citing *Hoffmann-La Roche*, 493 U.S. at 170; *Choimbol*, 475 F. Supp. 2d at 563). Given the discretionary and case-specific nature of the inquiry, district courts vary on what evidence is sufficient to justify conditional certification. For example, in *Bernard v. Household International, Inc.*, Judge Smith denied a motion for conditional certification of a nationwide class based in part on declarations from a company's Virginia employees, in which the Virginia employees asserted that similar policies applied to employees nationwide based upon "my understanding" and "belie[f]." 231 F. Supp. 2d 433, 435-36 (E.D. Va. 2002); *see also Yerger v. Liberty Mutual Group, Inc.*, 2011 WL 5593151, *5 (E.D.N.C. 2011) (employees' "declarations essentially recite the same language, suggesting that the declarants signed them without significant

7

reflection"). But other courts have granted conditional certification based in part on broad affidavits similar to those introduced in the instant case. *See Pettenato*, 425 F. Supp. 3d at 282-83 (relying on affidavit provisions nearly identical to the affidavits in the instant case); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433-35 (D.N.M. 2018) ("while the declarations are almost identical, this point would not support denial of conditional certification"). These cases reflect the discretionary, case-specific inquiry at this stage, in which plaintiffs face a relatively low burden to establish that they are similarly situated from a legal perspective.

Granting or denying conditional certification under the FLSA does not carry the same legal consequences as class certification under Rule 23. As the Supreme Court explained, "[u]nder the FLSA . . . 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013). As the Third Circuit explained, "a denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action. Some courts permit the issue to be revisited after discovery or efforts by the named plaintiff to re-define the contours of the proposed collective action." *Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224–25 (3d Cir. 2016) (citing *Bamgbose v. Delta-T Group, Inc.*, 724 F. Supp. 2d 510, 514 (E.D. Pa. 2010)). However, the conditional certification decision carries important consequences in addition to a judicially authorized notice: it triggers discovery on a class-wide rather than an individual basis, which gives the plaintiff a better opportunity to more efficiently identify and recruit additional plaintiffs while the statute of limitations[6] is running, and also likely increases the

---

[6] The statute of limitations in FLSA actions is three years for willful violations, and two years for all other violations. 29 U.S.C. § 255.

defendant's discovery costs.  *See id.*; 7 William B. Rubenstein, Newberg on Class Actions § 23:28 (5th ed. 2020).

**B. Party Arguments**

Plaintiffs argue that they have met their "modest" burden to identify a common policy of Defendants that violates the FLSA, which is sufficient to trigger conditional "step one" certification and notice. (Pls.' Mem. Supp. at 1.) Plaintiffs argue that they and the putative class were improperly classified as exempt from the FLSA's overtime provisions, and accordingly they were paid salaries and no overtime for time worked in excess of forty hours per week. (*Id.* at 1, 4.) They argue that this classification was incorrect because their job duties were restricted to following Defendants' guidelines and did not involve the exercise of discretion or independent judgment. (*Id.* at 4.) Plaintiffs argue that they and the putative class had similar job duties but were given various, interchangeable job titles, a practice they claim is "pervasive in the managed care industry." (*Id.* at 2.)

In support of their Motion, Plaintiffs produce an exhibit consisting of job descriptions of positions at Optima that are pulled from the third-party job website Glassdoor, (ECF No. 26-1), and declarations from each of the four Plaintiffs (ECF Nos. 26-2 – 26-5). The declarations are mostly identical, and they describe common job duties of the putative class, Plaintiffs' job titles, the lack of discretion Plaintiffs were afforded, Plaintiffs' classification as exempt from the FLSA, and Plaintiffs' "understand[ing]" that there were many other putative class members with similar experiences. (ECF Nos. 26-2 – 26-5.) Plaintiffs assert that the members of the class of "Care Management Employees" were all classified as exempt from the FLSA under either the professional or administrative exemption, despite the fact that the employees were restricted to following guidelines and could not exercise much discretion or independent judgment. (Pls.' Mem. Supp. at 2-4.) Plaintiffs argue that the applicability of exemptions should not be addressed at step one, and they cite to district court

9

cases from across the country in which conditional certification was granted in lawsuits involving the managed care industry. (*Id.* at 7-9.)

Defendants characterize the proposed step one certification as a "fishing (and settlement) expedition" designed to drive up the costs of discovery in order to induce a lucrative settlement, when the underlying exemption claims of the named Plaintiffs are weak. (Defs.' Opp'n at 1-5.) Defendants argue that the "Care Management Employee" classification Plaintiffs have proposed is completely made up by the Plaintiffs and spans forty-three different "job codes" that involve very different job duties and required qualifications. (*Id.* at 11-19.) Therefore, they argue, Plaintiffs cannot establish that the putative class is "similarly situated." (*Id.* at 19.) Defendants challenge the sufficiency of the evidence put forward by the Plaintiffs: they argue that the Glassdoor posts are from a third-party and constitute inadmissible hearsay, and that the affidavits from the Plaintiffs are boilerplate documents that merely provide "conclusory" statements of the elements of a FLSA collective action. (*Id.* at 19-22.) Defendants note that all of the named Plaintiffs worked at the company for very short periods of time (two for less than six months, the other two for less than two years) and therefore have limited insight into positions other than their own at the company. (*Id.* at 4.) They also note that each of the named Plaintiffs had either a Bachelors or other advanced degree, and thus they all will likely be found to be properly exempt from the FLSA at the summary judgment stage under *Williams v. Genex Services, LLC*, 809 F.3d 103 (4th Cir. 2015) (granting summary judgment to employer of a Registered Nurse "Field Medical Case Manager" under the FLSA professional exemption). (*Id.* at 1.)

**C. Analysis**

At this early stage in the litigation, Plaintiffs have met their burden to justify conditional certification of and notice to a putative class of "Care Management Employees." Plaintiffs' burden at this stage is to put forward minimal evidence that the Plaintiffs and putative class members are "similarly situated" with respect to legal and factual circumstances, and primarily that there exists a

10

common policy or scheme that violated the FLSA. *See Choimbol*, 475 F. Supp. 2d at 562-63 (citations omitted). Based on the parties' briefs and declarations, Plaintiffs have met their relatively low burden to preliminarily establish that such putative class is "similarly situated," and an opportunity for discovery to more thoroughly investigate the issue is warranted.

Plaintiffs have described in briefs and declarations their job duties, Optima's classification of each of them as exempt from the FLSA wage and hour provisions, and the existence of others across the company who have similar duties and are likewise classified as exempt. The lead Plaintiff and opt-in Plaintiffs each explain that, although they held different titles at Optima, their duties were similar:

> collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendant's computer system (data entry); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); educating members about their health plan (plan education); and other similar work….

(*See* Edwards Decl. ¶ 2; *see also* ECF Nos. 26-3 – 26-5 ¶¶ 2.) Further, they explain how the exercise of their duties was significantly constrained by Optima policies, procedures, and software guidelines, thereby limiting their discretion and judgment. (*See* Edwards Decl. ¶ 5; *see also* ECF Nos. 26-3 – 26-5 ¶¶ 5.) Plaintiffs also declare that they were not required to have degrees or certifications, they were not involved in management, and they did not provide clinical care. (*See* Edwards Decl. ¶¶ 4, 6, 7, 8; *see also* ECF Nos. 26-3 – 26-5 ¶¶ 4, 6, 7, 8.) Finally, the lead Plaintiff and opt-in Plaintiffs each assert that they "understand" that the Defendants employ at least 100 similarly situated "Care Management Employees" in Virginia based on Plaintiffs' conversations with others, training calls and seminars, and observations while at work. (*See* Edwards Decl. ¶ 11; *see also* ECF Nos. 26-3 – 26-5 ¶¶ 11.)

The Plaintiffs' declarations are certainly highly similar, and the job descriptions are phrased broadly and without specific detail or examples. But the fact that the declarations are very similar does not necessarily undermine their value to the conditional certification analysis. *See Deakin*, 328 F.R.D. at 435 (citing *Ruggles v. WellPoint, Inc.*, 591 F.Supp.2d 150, 160 (N.D.N.Y. 2008)). Indeed, one would expect Plaintiffs subject to a common FLSA violation to have similar, and perhaps identical, experiences. And though contents of Plaintiffs' declarations are very broad, the Court finds that they are sufficient to meet the lower burden at step one. *See Choimbol*, 475 F. Supp. 2d at 562; *McNeil*, 2016 WL 11673838, at *3.

The Defendants filed significantly more detailed declarations explaining the various jobs that fit within the "Care Management Employee" umbrella created by the Plaintiffs, and they describe how there are substantial differences in job duties and required qualifications. (*See* Defs.' Opp'n at 9-19; Defs.' Exs. 1-3, ECF Nos. 28-1 – 28-3.) Defendants, through their Memorandum in Opposition and three declarations from supervisors at Optima, explain two broad buckets of employees at Optima: those who do "utilization review" work, which involves analyzing requests for benefits and helping to determine whether the request will be authorized and paid for by the plan, and those who do "case management" work, which is more of a field role that involves working directly with members to help guide them through individual healthcare situations. (*See* Defs.' Opp'n at 9-11.)

Defendants further break down the variety of roles within the company, and how job duties can differ substantially even within a particular job grouping or job title based upon qualifications and specific job duties. (*See id.* at 11-18, Defs.' Exs. 1-3, ECF Nos. 28-1 – 28-3.) Defendants identify specific job titles as Behavioral Health Utilization Managed Care Coordinator ("BHUMCC")[7],

---

[7] This role, which was allegedly held by Plaintiffs Edwards and Harris, requires an advanced degree according to Defendants and can variously involve utilization review, case management, or work on a new special project. (Defs.' Opp'n at 13-15; Defs.' Ex. 1 ¶¶ 6-8.)

12

Integrated Care Manager ("ICM")[8], Transition Care Coordinator ("TCC")[9], Authorization Coordinator and Pre-Authorization Coordinator ("AC" and "Pre-AC")[10], and Clinical Claims Reviewer ("CCR")[11]. Declarations from Defendants' employees explain how the particular job duties within each job role can vary significantly—with some working in the field with members, others conducting utilization reviews, and others working on special projects—and across the different departments of the company, such as the Behavioral Health department and the Managed Long Term Services and Supports ("MLTSS") department. (Defs.' Exs. 1-3.)

Defendants' briefs and declarations help paint a somewhat more complete picture of the Optima workforce. But the briefs and declarations also suggest that many employees within Plaintiffs' proposed "Care Management Employees" grouping have job duties that can be broadly characterized as involving case management, utilization review, or some combination of the two. (*See* Defs.' Opp'n at 9-11.) And with limited exceptions, Defendants do not appear to contest that many of these putative "Care Management Employees" have been classified as exempt from the FLSA. (*See* Defs.' Opp'n at 3, 7.) Taken together with Plaintiffs' briefs and declarations, Plaintiffs have sufficiently demonstrated the likelihood of a similarly situated class of "Care Management Employees" to justify further discovery of the existence of this class and to notify potential members

---

[8] According to Defendants, this role has changed since former ICM Plaintiffs Andaluz and Grier left the company. (Defs.' Opp'n at 15-16.) As Defendants describe it, this job requires an RN degree and three years of experience and involves working with high-risk cases to help decide the appropriate course of action. (*Id.*; Defs.' Ex. 1 ¶¶ 9-19.) These roles can involve primarily utilization review work, primarily case management (field) work, or work on a new "Cipher Health Initiative" that seeks to proactively reduce hospital readmissions. (Defs.' Ex. 1 ¶¶ 9-19.)

[9] Defendants describe this as a field-based position in which employees help members transition into and out of hospitals and other care facilities. (Defs.' Opp'n at 17-18.) This position allegedly requires an RN degree, licensure, and at least three years of nursing experience. (*Id.*) According to Defendants, the nature of this job varies by region and by the type of facility TCCs primarily work with (for example, long term care facilities or skilled nursing facilities). (*Id.*) None of the current Plaintiffs performed this role, but the Plaintiffs claim this job as part of the broader "Care Management Employee" class. (Pls.' Mem. Supp. at 2.)

[10] According to Defendants, this role involves purely utilization review work at the threshold level and does not require an advanced degree or licensure. (Defs.' Opp'n at 16-17.) Defendants assert that this role has been classified as non-exempt from the FLSA since early 2019, and previously was claimed as exempt under the administrative exemption. (*Id.*) None of the current Plaintiffs held this role, though the Plaintiffs claim it as part of the putative class. (Pls.' Mem. Supp. at 2.)

[11] Plaintiffs clarified that they were not including these individuals, who are medical coders, in the proposed class. (Pls.' Reply at 2.)

of the lawsuit. Indeed, courts in other districts have made similar findings in cases involving the managed care industry. *See Pettenato*, 425 F. Supp. at 282-83; *Deakin*, 328 F.R.D. at 433-34.

Finally, it is important to note the limitations of this finding. The Court's finding will only conditionally certify the putative class and authorize notice. An accompanying Order will issue to allow for a limited period of collective action discovery, direct the parties to confer regarding the final collective action notice, and delay further scheduling and dispositive motions until the closure of the opt-in period. Defendants will have an opportunity to move to decertify the class, at which point Plaintiffs will bear a heightened evidentiary burden, and brief, broad declarations may not suffice.

**D. Defining the Putative Class**

Plaintiffs' Memorandum in Support describes the proposed class as "All individuals employed by Defendant[s] as Care Management Employees in the last three years who were paid a salary and were classified as exempt from overtime." (Pls.' Mem. Supp. at 4.) The Court will adopt this class definition but seeks to clarify which employees fit within the "Care Management Employees" definition. Pulling from the Plaintiffs' briefs, the Court finds this putative class to be as follows for the purposes of conditional certification:

> "Care Management Employees" are defined as non-clinical, non-managerial employees that perform utilization review and/or case management duties including collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendants' computer system (data entry); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); educating members about their health plan (plan education); and other similar work.[12] "Care Management Employees" does not encompass the "Clinical Claims Reviewer" position.[13] Additionally, individuals who were eligible to participate in the settlement of *Brunty v. Optima Health Plan, et al.*, Case No. 2:19-cv-255, are not "Care Management Employees."[14]

---

[12] (*See* Pls.' Mem. Supp. at 1-4.)
[13] (*See* Pls.' Reply at 2.)
[14] (*See* Am. Compl. ¶ 51.)

14

## IV. CONCLUSION

At this preliminary stage in the litigation, the Court finds that Plaintiffs have made a sufficient showing that they are similarly situated to the putative class of "Care Management Employees" such that conditional certification of a collective action under the Fair Labor Standards Act is warranted. The Court will order the parties to jointly draft a proposed notice. The Court will set forth a process for notifying potential plaintiffs of the opportunity to opt-in to the litigation, and will set parameters for the opt-in period. For the reasons stated above, the Motion for Conditional Certification will be GRANTED.

An appropriate Order shall issue.

Richmond, Virginia
Date: March 29, 2021

/s/ Roy
Roderick C. Young
United States District Judge