# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

NIKIA EDWARDS, on behalf of herself
and others similarly situated,

      Plaintiff,

          v.                        **Civil Action No.** 2:20-cv-192

OPTIMA HEALTH PLAN, and SENTARA
HEALTH PLANS, INC.,

      Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR
STANDARDS ACT, FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR,
FOR APPROVAL OF SERVICE AWARDS, AND FOR APPROVAL OF ATTORNEYS'
FEES AND COSTS**

## I.    <u>INTRODUCTION</u>

Named Plaintiff Nikia Edwards, on behalf of herself and all other persons similarly situated, and Optima Health Plan and Sentara Health Plans, Inc. ("Defendants") have reached a settlement in this lawsuit (the "Action"). The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging information and payroll records, participating in a day long mediation with the Honorable F. Bradford Stillman (Ret.), and engaging in negotiations for a week following the mediation. The terms of the settlement are reasonable, appropriate, and fair to all Parties and Settlement Class Members.

The Parties' Settlement covers the Named Plaintiff Nikia Edwards, Opt-In Plaintiffs Natalie Harris, Andrea Andaluz, and Edna Preau-Grier (Named Plaintiff and Opt-in Plaintiffs are referred to in this memorandum as "Plaintiffs"), and the claims of 66 similarly situated individuals (the "Settlement Class Members") who worked as a salaried Behavioral Health Utilization Management Care Coordinator, Safety Initiative Coordinator, or Transition Care Coordinator[1] (or substantially equivalent titles) (collectively, the "Relevant Position") after July 1, 2019 and who are listed on Exhibit A to the Stipulation of Settlement agreed to by the parties.  After approval, all Plaintiffs and Settlement Class Members will receive a Settlement Payment issued by a Settlement Administrator. Participating Class Members, which includes the Named Plaintiff, Opt-in Plaintiffs, and all Settlement Class Members who elect to participate in the Settlement by negotiating the settlement check issued to them, will provide Defendants with a limited release of the claims they have for or related to unpaid overtime wages under the FLSA, state, local, or common law for the time they worked in a Relevant Position. Settlement Class Members who did

---

[1] As it relates to the Named Plaintiff and Opt-In Plaintiffs, Relevant Position also includes time they worked (if any) as an Integrated Care Manager.

not previously join the Action as an Opt-In Plaintiff and who do not cash their Settlement Payment checks will *not* release any claims against Defendants.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, Plaintiffs respectfully request the Court approve their Joint Stipulation of Settlement (herein "Joint Stipulation"), attached hereto as Exhibit 1, and appoint Analytics Consulting LLC as the third-party Settlement Administrator.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Factual Allegations**

Defendants operate a health insurance company under the trade name Optima Health and provide health plan coverage to approximately 551,000 members. Answer to First Am. Collective Action Compl., ¶ 1, ECF No. 27. Named Plaintiff Nikia Edwards worked for Defendant Optima Health Plan as a Behavioral Health Utilization Management Care Coordinator in Virginia between approximately June 2018 and November 2018. *Id.* ¶ 11; Defs.' Resp. to Mtn. to Conditionally Certify Class, p. 9, ECF No. 28.

Plaintiffs allege that the Settlement Class Members primarily performed non-exempt job duties including collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendants' computer system (data entry); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); educating members about their health plan (plan education); and other similar work. First Amended Collective Action Complaint ¶ 8, ECF No. 21. Plaintiffs further allege that as part of their job duties, Settlement Class Members did not exercise discretion and independent judgment with

3

respect to matters of significance, did not provide nursing care in a clinical setting, and did not provide direct medical care to members. *Id.* ¶¶ 21-22. Plaintiffs also allege that Settlement Class Members regularly worked more than 40 hours per week and were not paid overtime at one and one-half times their regular rate. *Id*. ¶¶ 66. Plaintiffs claim that because the Settlement Class Members primarily performed non-exempt work, Defendants violated the Fair Labor Standards Act by failing to pay them when they worked over 40 hours per week. *Id.* ¶¶ 69-70.

Defendants do not admit any liability, deny any wrongdoing, and deny that Plaintiffs and Settlement Class Members are entitled to any damages. *See* Defs.' Answer to First Amended Collective Action Complaint, ECF No. 18. Defendants deny any and all allegations relating to this matter, including, among other things, that they failed to pay overtime wages or that they otherwise violated their legal obligations. *Id.* Defendants asserted affirmative defenses, including statutory exemptions under the Fair Labor Standards Act, contending that Plaintiffs and Settlement Class Members are exempt under the professional, the administrative exemption, the highly compensated exemption, and/or the combination/hybrid exemption of the FLSA and are not entitled to overtime wages. *Id.* p. 18, Seventh Affirmative Defense. Defendants further asserted that even if Plaintiffs and Settlement Class Members were entitled to overtime wages under the FLSA, witness testimony, mileage reports, and the time stamps in Defendants' care management software would prove that Settlement Class Members worked less than forty hours a week in all or at least the majority of weeks they worked for Defendants. Ex. 2, Hedgpeth Decl. ¶ 15.

### B.    Overview of Investigation, Litigation, and Settlement Negotiations

### 1.    Procedural History of the Litigation & Investigation

The Named Plaintiff filed this Action on April 16, 2020.  Complaint, ECF No. 1. Opt-In Plaintiff Natalie Harris filed her consent form on April 20, 2020 and Opt-In Plaintiffs Andrea

Andaluz and Edna Preau-Grier filed their consent forms on July 9, 2020. Consents, ECF No. 2 and ECF No. 18. Plaintiffs' First Amended Collective Action Complaint, which revised the scope of the proposed collective, was filed by leave of the Court on July 24, 2020. ECF No. 20. The Parties requested that the Court set a briefing schedule on Plaintiffs' Motion for Conditional Certification and stay discovery until after the Court ruled on Plaintiffs' Motion because it would not be clear who (or how many plaintiffs) would join the case until after the Court ruled on Plaintiffs' motion. *See* Memo in Support of Consent Motion for Stay of Discovery, ECF No. 23. The Court granted the Parties' Motion on July 28, 2020. *See* Order, ECF No. 24.

Plaintiffs filed their Motion for Step-One Notice Pursuant to the Fair Labor Standards Act, and their Memorandum of Law in Support, on August 4, 2020. Defendants filed their Opposition to the motion on August 28, 2020 (ECF No. 28) and Plaintiffs filed their Reply brief on September 11, 2020. ECF No. 31. On March 29, 2021, the Court issued an Order granting Plaintiffs' motion and conditionally certifying a class of "Care Management Employees" comprised of:

> "…non-clinical, non-managerial employees that perform utilization review and/or case management duties including collecting information to document insured individuals' medical circumstances (data collection); inputting that information into Defendants' computer system (data entry); using established guidelines to maximize utilization of plan resources through the application of predetermined criteria (utilization management); coordinating care by arranging appointments and referrals and obtaining necessary authorizations from individuals (care coordination); educating members about their health plan (plan education); and other similar work."

ECF No. 33, p. 14.

Following the Court's Order, the Parties agreed that their interests would be best served by making a serious attempt at resolving the lawsuit prior to the issuance of notice to the putative class members and requested that the Court stay the case for 90 days to allow the parties to exchange documents and participate in mediation. *See* Memo. in Support of Consent Motion to

Stay Proceedings, ECF No. 45. On May 5, 2021, the Court granted the motion and stayed the case for 90 days. ECF No. 46.

### 2.    Exchange of Documents and Information

The Parties agreed to mediate with the Honorable F. Bradford Stillman (Ret.) on July 1, 2021. Ex. 2, Hedgpeth Decl. ¶ 9. However, prior to producing documents and attending mediation, the Parties engaged in lengthy discussions regarding the specific job positions that would be the subject of any settlement negotiations. *Id.* ¶ 10.

Prior to the mediation, the Parties engaged in extensive and detailed investigations and exchange of information regarding the performance of job duties, method of compensation, hours worked, mechanisms that could identify time worked, complaints made to management regarding hours worked, unpaid overtime, and Plaintiffs' caseloads. *Id.* ¶11. On May 28, 2021, Defendants produced 114 separate payroll spreadsheets containing pay data for nearly 15,000 workweeks. *Id.* ¶ 12.

Plaintiffs' counsel thoroughly analyzed the merits of the case and the value of Plaintiffs' and potential Settlement Class Members' claims during the prosecution of this action. *Id.* ¶ 13. This process included, among other things, (1) multiple conferences with Plaintiffs; (2) surveys sent to Plaintiffs to gather information to support their claims and damages; (3) conferences with Defendants regarding the scope of production, including a class list and compensation and time data; (4) inspection and analysis of the documents and materials produced by Plaintiffs, Opt-in Plaintiffs and Defendants; (5) analysis of the various legal positions taken and defenses raised by Defendants; (6) investigation and analysis of the guidelines used by Plaintiffs and the potential Settlement Class Members in the performance of their work; (7) assembling and analyzing data to

compute potential class-wide damages; and (8) investigation regarding comparable settlements in similar cases involving allegedly misclassified care management employees. *Id*.

### 3.    The Parties Resolved the Claims After the Mediation

The Parties participated in a joint pre-mediation conference call with Judge Stillman, as well as one-on-one calls with Judge Stillman following the submission of their mediation statements. Ex. 2, Hedgpeth Decl. ¶ 14. Although the Parties attended a full-day mediation on July 1, 2021, they were not able to reach a settlement. *Id*. ¶ 15. The Parties exchanged emails and participated in numerous conferences over the next week and agreed upon the material terms of a settlement on July 9, 2021. *Id*. ¶ 16.

The investigation conducted in this matter, as well as discussions between counsel, have been more than sufficient to give the Plaintiffs and their Counsel a sound understanding of the merits of their positions and to evaluate the claims in the case. *Id*. ¶ 17. Plaintiffs and their Counsel believe that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of Plaintiffs and the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendants would prevail on its defenses, and numerous potential appellate issues. *Id*. ¶18.

## III.    <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### A.    The Settlement Fund

Defendants have agreed to pay $350,000.00 to settle the claims in this Action, which shall be used to provide for (i) Settlement Payments to Plaintiffs and Settlement Class Members; (ii) Service Awards to the Plaintiffs; (iii) Plaintiffs' Attorneys' Fees; and (iv) Plaintiffs' Litigation Expenses; and (v) the costs of Settlement Administration (if any) over $10,000. Ex. 1, Joint

Stipulation, § 5(a). The Settlement Fund does not include the employer's share of applicable employment taxes on the wage portion of the settlement, or the costs of Settlement Administration up to $10,000, which will be paid by Defendants outside the Gross Settlement Amount. Ex. 1, Joint Stipulation, §§ 5(a)(v) and 5(c).

### B. Settlement Class Members and Distribution of Settlement Checks

The Settlement covers the four Plaintiffs who have already opted into the Action and 66 other individuals who worked for Defendants in Virginia as salaried Behavioral Health Utilization Management Care Coordinators, Safety Initiative Coordinators, and/or Transition Care Coordinators after July 1, 2019 and who are listed on Ex. A to the Joint Stipulation.  Ex. 1, Joint Stipulation, § 1(q). All Settlement Class Members are identified in Attachment A to the Joint Stipulation. The Settlement does not resolve or release the claims of Settlement Class Members who have not previously opted into the Action and who do not negotiate their settlement check. Ex. 1, Joint Stipulation, § 7(c).

The Parties have selected Analytics Consulting LLC to be the Settlement Administrator. Ex. 1, Joint Stipulation, § 1(o). Should the Court approve the Settlement, the Settlement Administrator will shortly thereafter mail to all Settlement Class Members a check representing his or her Settlement Payment along with a Notice of Settlement of Collective Action explaining the key terms of the Joint Stipulation. Ex. 1, Joint Stipulation, § 10(g)(i). A copy of the Notice that will be mailed with the Settlement Payments is included as Attachment B to the Joint Stipulation.

Pursuant to Section 10 of the Joint Stipulation, no later than 35 days after approval of the Parties' Joint Stipulation, the Settlement Administrator shall mail the Settlement Notice and Settlement Payments to Plaintiffs and Settlement Class Members via First Class U.S. Mail. Ex. 1, Joint Stipulation, §§ 10(e) and 10(g)(i).  The Settlement Payment checks shall be negotiable for

120 days from the date they are mailed by the Settlement Administrator (the "Check Cashing Deadline"). *Id.* § 10(g)(i). The Settlement Administrator will forward any settlement checks returned as undeliverable with a forwarding address to the identified forwarding address. *Id.* § 10(g)(iv). If any settlement checks are returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will attempt to contact the Settlement Class Member via telephone, and if unsuccessful, will run a new search of the Settlement Class Member's social security number and name through available databases, and will forward the Settlement Payment to the Settlement Class Member at the new address obtained in this manner, if any. *Id.* If the Settlement Payment is returned as undeliverable after the second mailing, or if no forwarding address is otherwise located before the Check Cashing Deadline, the notice process shall end for that Settlement Class Member. *Id.*

### C.    Limited Release for Settlement Class Members

Participating Class Members will release the Released Parties from all claims or causes of action they have for or related to unpaid overtime wages while they worked as salaried Behavioral Health Utilization Management Care Coordinators, Safety Initiative Coordinators,  Transition Care Coordinators; and/or (in the case of Plaintiff and the Opt-In Plaintiffs) Integrated Care Managers (or substantially equivalent titles), including under the FLSA, state law, local law or common law. Ex. 1, Joint Stipulation of Settlement, § 7(a). The term Participating Class Members includes the Named Plaintiff, the three Opt-in Plaintiffs, and all Settlement Class Members who elect to participate in the Settlement by negotiating the settlement check issued to them. *Id.* §(1)(i). Settlement Class Members who did not previously opt-into the case and who do not negotiate their Settlement Payment shall *not* release their federal, local, or state overtime claims against Defendants pursuant to the Joint Stipulation of Settlement. *Id.* § 7(c).

9

### D.     Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

Each Settlement Class Member's individual settlement payment has been calculated using the payroll data Defendants produced in the litigation. Because Defendants did not keep track of the hours each Settlement Class Member worked during each week, Plaintiffs' Counsel calculated each Settlement Class Member's alleged hours based on the number of regular hours he or she was paid for working in the two week pay period. *Id.* § 6(a).  Plaintiffs' Counsel distributed regular work hours from 0 to 40 into work week 1 and any regular hours greater than 40 to work week 2. *Id.* § 6(a)(ii).  For settlement distribution purposes, Plaintiffs added 5 additional hours of work time to each work week, and the sum equal the total hours worked per work week. *Id.* § 6(a)(iii).

The Settlement Class Member's Regular Rate for each pay period was calculated by totaling the Settlement Class Member's earnings for each pay period, allocating half the earnings to work week 1 and half the earnings to work week 2, and dividing the weekly earnings by the total number of hours assumed to have been worked per week for settlement purposes. *Id.* § 6(a)(iv)-(v).  If the total hours worked per work week for settlement purposes exceeds 40, the overtime hours in the work week equals the number of hours over 40. *Id.* § 6(a)(vi). For each pay period, the Settlement Class Member's regular rate multiplied by the number of overtime hours and by 0.5 equals the Settlement Class Member's overtime wages owed in the work week.  *Id.* § 6(a)(vii). Liquidated damages were computed to equal the amount of overtime wages owed in the work week. *Id.* § 6(a)(viii).

The sum of each Settlement Class Member's total overtime wages and liquidated damages for all work weeks divided by the sum of all Settlement Class Members' total overtime wages and liquidated damages is each Settlement Class Member's "Ratable Share." *Id.* § 6(a)(xi). Each

Settlement Class Member's Settlement Payment shall be calculated by multiplying his or her Ratable Share by the Net Settlement Amount. *Id.*

Each Settlement Class Member will receive his or her Settlement Payment in one check, with half of the Settlement Payment representing owed wages and the other half of each Settlement Payment representing liquidated damages. *Id.* § 6(c). Regular employee payroll deductions shall be withheld from the portion of each Settlement Payment that is allocated to wages. The Settlement Administrator will issue each Settlement Class Member an IRS Form W-2 for the wage portion of each Settlement Payment and an IRS Form 1099 for the liquidated damages portion of each Settlement Payment. *Id.* Any Settlement Payments that remain uncashed after the Check Cashing Deadline will be returned to Defendants. *Id.* § 10(g)(vii).

### E.    Service Awards and Attorneys' Fees and Litigation Costs

Plaintiffs' Counsel shall apply for a Service Award to the Named Plaintiff in the amount of $7,500. *Id.*, § 9(d). Plaintiffs' Counsel shall apply for a Service Award to be paid to each of the three Opt-in Plaintiffs in the amount of $1,000 each. *Id.*, § 9(e). Plaintiffs' Counsel shall also request an amount not to exceed $116,666 from the Settlement Fund as attorneys' fees, and an amount not to exceed $3,431.63 for reimbursable litigation expenses. *Id.*, § 9(a).

## IV.    THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Courts in the Fourth Circuit require parties to obtain court approval of an FLSA Settlement. *Gagliastre v. Cap. George's Seafood Restaurant, LP,* No. 2:17 cv 379, 2019 WL 2288441, at *1 (E.D. Va. May 29, 2019) (Jackson, J.). The standard for approval is straightforward. A court should approve an FLSA settlement if it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Minsterman v. S.L. Nusbaum Realty Co.,* No. 2:10 cv 303, 2011 WL 9687817, at * 1 (E.D. Va. Jan. 21, 2011), citing *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1355 (11th Cir.

1982). When analyzing whether the settlement meets the standard for approval, a strong presumption exists in favor of a finding that a settlement is fair. *Gagliastre,* 2019 WL 2288441, at *1.

In evaluating whether an FLSA settlement meets the standard for approval, a court makes the following three determinations: (1) whether the FLSA issues are actually in dispute; (2) whether the settlement is a reasonable compromise over the issues, and (3) if there is a clause on attorneys' fees, that the attorney fee award is a reasonable request. *Gagliastre,* 2019 WL 2288441, at * 1; *Brockman v. Keystone Newport News, LLC,* No. 4:15-cv-74, 2018 WL 4956514, at *2 (E.D. Va. October 21, 2018) (Jackson, J.). The Parties' Settlement Agreement meets the standard for approval.

### A.    The Proposed Settlement Resolves a Bona-Fide Dispute Between the Parties

The Settlement is a result of contested litigation and was reached only after the Parties performed an extensive investigation and litigated this matter for nearly a year-and-a-half, as described in Section II, *supra*. The Parties vigorously contested numerous substantive issues, including whether Plaintiffs and the Settlement Class Members were properly classified as exempt, whether they worked over forty hours a week, the appropriateness of liquidated damages, and whether this case could be tried as a collective action. The Settlement was reached only after the parties attended a day-long mediation with retired Judge F. Bradford Stillman and then negotiated for another week afterwards.

Plaintiffs alleged Defendants violated the FLSA by misclassifying Plaintiffs and the Settlement Class Members as exempt and failing to pay them overtime at one and one-half times their regular rate when they worked more than forty (40) hours per week. Ex. 2, Hedgpeth Decl. ¶ 9. In support of their position, Plaintiffs relied on guidance from the U.S. Department of Labor

and judicial decisions holding that the administrative and learned professional exemptions do not apply to case managers working the managed care industry.[2] *Id.* ¶ 11. Defendants denied the allegations and asserted that Plaintiffs and the Settlement Class Members are exempt employees. Defendants relied on different judicial decisions to support its position that the white-collar exemptions applied to the Settlement Class Members.[3] Ex. 2, Hedgpeth Decl. ¶ 12.

The Parties also disputed the number of hours Plaintiffs and the Settlement Class Members worked per week.  Ex. 2, Hedgpeth Decl. ¶ 13. Defendants did not track Plaintiffs' and the Settlement Class Members' work hours. *Id.* ¶ 14. Plaintiffs claimed they regularly worked a minimum of 40 to 45 hours a week. Defendants, on the other hand, asserted a review of their business records demonstrated that Plaintiffs and the Settlement Class Members rarely, if ever, worked more than forty (40) hours per week. *Id.* ¶ 15.

The Parties also disputed whether liquidated damages were appropriate, whether, if overtime violations occurred, they were willful violations that triggered the three-year statute of limitations period, and whether this action could proceed to trial on a collective action basis. *Id.* ¶¶ 16.  If the matter had not settled, Plaintiffs risked decertification of their FLSA collective action after discovery, a process that would have been time-consuming and costly for all Parties. *Id.* ¶ 17.

This procedural posture, where Defendants denied that they violated the FLSA by classifying Plaintiffs and the Settlement Class Members as exempt and where settlement was reached only after private mediation, supports the finding that a bona-fide dispute exists between the Parties. *Davis v. Terminex Company, Inc.,* No. 2:09 cv 309, 2011 WL 13234297, at *2 (E.D.

---

[2] *See* Opinion Letter Fair Labor Standards Act (FLSA), 2007 WL 541650, at *2 (Feb. 8, 2007); *Clark v. Centene Co. of Texas, L.P.,* 44 F. Supp. 3d 674, 682–83 (W.D. Tex. 2014).
[3] *See e.g., Williams v. Genex Services, LLC,* 809 F.3d 103 (4th Cir. 2015) (holding that a registered nurse working as a field medical case manager was not entitled to overtime under the learned professional exemption under the FLSA).

Va. October 11, 2011) (settlement reflected resolution of a *bona fide* dispute between the parties when the defendant contended it properly classified its employees as exempt under the FLSA).

> **B.    The Proposed Settlement is Reasonable**

When examining whether the settlement is reasonable, courts consider the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Brockman,* 2018 WL 4956514, at * 2. The terms of the Settlement satisfy each of these six factors.

> **1.    The Amount of Discovery Engaged in by the Parties**

Although the Parties were able to resolve the case prior to engaging in extensive formal discovery, the Parties exchanged information informally, and Plaintiffs and their counsel had access to significant amounts of documentation and information prior to mediation. Ex. 2, Hedgpeth Decl. ¶ 28. In addition to a list with the names, contact information, job position, and employment tenure of all putative class members, Defendants produced comprehensive payroll data containing nearly 15,000 workweeks. *Id.* ¶ 21-22. Plaintiffs' Counsel gathered information and documentation from Plaintiffs relating to their job duties, hours worked, minimum qualifications to perform their job duties, the extent to which their educational background was relevant to the work, the amount of independent judgment and discretion they exercised in the course of their duties, and compensation structure. *Id.* ¶ 24. Plaintiffs' Counsel also had access to the form Managed Care Services Agreement with the Commonwealth of Virginia Department of Medical Assistance Services, which governs Defendants' care coordination and utilization review

programs and the services provided by Plaintiffs and the Settlement Class Members. *Id.* ¶ 25.  The stage of litigation had advanced so that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. As a result, the Parties had all information that they needed to evaluate the strength of their claims. This factor supports granting approval of the Settlement.

### 2.    The Stage of the Proceedings

The parties litigated this case for sixteen months. They exchanged substantial information and records before participating in a day long mediation with the Honorable F. Bradford Stillman (Ret.), which resulted in the resolution of this Action.

If the litigation had continued, it would have been complex, expensive, and protracted. Although Plaintiffs and Defendants each cited to applicable cases they contended supported their positions, no court has issued an opinion on the exemption defenses that Defendants asserted for the specific positions held by Plaintiffs and the Settlement Class Members. As a result, the parties likely would have spent significant resources briefing contested issues. In addition, the Parties would have potentially had to retain expert witnesses to testify to the hours worked by Plaintiffs and the Settlement Class Members. The parties likely would have appealed any final judgment entered by this Court. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now.

### 3.    There is No Evidence of Fraud or Collusion

The parties negotiated the Settlement at arm's-length following the exchange of robust mediation statements and with the assistance of a private mediator.  The Parties were unable to agree to the material terms of a settlement until a week after the mediation. There was no collusion.

### 4.  The Experience of Plaintiffs' Counsel

The attorneys at The Hedgpeth Law Firm, PC and Siegel Law Group, PLLC are highly experienced wage and hour litigators. Messrs. Hedgpeth and Siegel have extensive experience representing care management employees in misclassification cases, and both are contributing authors for the next edition of the wage and hour treatise *Wage and Hour Laws: A State-by-State Survey*, published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Ex. 2, Hedgpeth Decl. ¶ 7; Ex. 3, Siegel Decl. ¶ 7. Misclassification cases involving care management employees are typically more complex than most wage and hour cases, as they often require a comprehensive understanding of federal and state laws relating to Medicaid and/or Medicare administration, as well as licensure requirements for nurses and other clinicians. Ex. 2, Hedgpeth Decl. ¶ 8. Messrs. Hedgpeth's and Siegel's experience has provided their firms with expertise in the legal, factual, and administration issues that characterize these types of actions. Ex. 2, Hedgpeth Decl. ¶ 8, Siegel Decl. ¶ 8.

The role of local counsel for the Plaintiffs was filled by Zev H. Antell of the Richmond, Virginia law firm Butler Royals, PLC.  Mr. Antell has significant experience as counsel in FLSA collective actions within Virginia's Federal Courts including, but not limited to, *Rogers et al. v. City of Richmond,* 3:11cv620 (E.D. Va. Richmond), *Devine, et al. v. City of Hampton,* 4:14cv81 (E.D. Va. Norfolk), *Wright et al. v. Roanoke* 7:18cv210 (WD VA Roanoke), *Clinton et al. v. GEICO,* 2:16cv430 E.D. Va. Norfolk), *LaCroix et al. v. Portsmouth,* 2:13cv533 (EDVA Norfolk), *Hall v. Dominion,* 3:18cv321 (E.D. Va. Richmond).  Ex. 4, Declaration of Zev Antell ¶¶ 11-13. Mr. Antell is a regular speaker at Continuing Legal Education Seminars both within and outside Virginia dealing with FLSA and associated matters. Ex. 4, Antell Decl. ¶ 7.

Plaintiffs' Counsel's extensive experience as wage and hour litigators supports approval of the Settlement.

### 5.   The Opinions of Counsel

Courts are entitled to give weight to the opinion of competent counsel. *Gagliastre,* 2019 WL 2288441, at *3. Plaintiffs' Counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour class actions in the managed health care industry, Plaintiffs' Counsel's opinion is that the Settlement is fair, reasonable and adequate. Ex. 2, Hedgpeth Decl. ¶ 30. The opinion of counsel supports approval of the Settlement.

### 6.   The probability of the plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery

The Settlement has the effect of (1) providing monetary relief to those Settlement Class Members who have already opted into the Action and those who choose to negotiate their settlement checks and become Participating Settlement Class Members, (2) in exchange for a narrow and limited release of the overtime wage claims raised in the Action only, and (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates Settlement Class Members who choose to participate in the Settlement and eliminates the possibility of decertification of the collective following phase two discovery, loss on summary judgment, loss at trial, or loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now. The substantial benefit that

Settlement Class Members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement. The Gross Settlement Amount represents approximately 115% of the overtime wages allegedly owed to all Settlement Class Members assuming they worked 5 additional hours during each and every workweek they worked.  Ex. 2, Hedgpeth Decl. ¶ 32.  Said another way, this is the equivalent to Settlement Class Members recovering 100% of their allegedly owed overtime wages and 15% of their liquidated damages. Even *after* the payment of attorneys' fees and costs, settlement administration costs, and the participation awards, all Settlement Class Members will receive a check representing 72% of their allegedly owed overtime wages. *Id*. ¶ 33. The largest settlement payment is more than $8,000, with the average Settlement Payment to the Class Members being approximately $3,100. *Id.* ¶ 34.  This is an excellent result given that Defendants deny that Plaintiffs and Settlement Class Members are entitled to overtime at all and vigorously dispute that they regularly worked over 40 hours each week. In addition, Settlement Class Members who have not yet opted into the Action may elect to not cash their Settlement Payment check and not release their overtime wage claims.

The recovery by the Settlement Class Members is well within the normal range for approval of FLSA settlements. *Brockman,* 2018 WL 4956514, at * 4 ("Courts have found that sixty or eighty percent recovery is sufficient.")

## V.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

### A.    The Standard for Approving Attorneys' Fees in FLSA Settlements

The attorneys' fees provision of the FLSA exist to enable plaintiffs to employ skilled lawyers and, thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

18

the action."). In reviewing the appropriateness of an attorneys' fee award in an FLSA settlement, the court must review "'the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement.'" See *Poulin v. General Synamics Shared Red., Inc.,* No. 3:09-cv-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010), quoting *Silva v. Miller,* 954 F. Appx 349, 351 (11th Cir. 2009).  It is within the Court's discretion to decide how to determine a reasonable attorneys' fee. *Gagliastre,* 2019 WL 2288441, at * 4. Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method – "the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases" like this one. *Gagliastre,* 2019 WL 2288441, at * 4, citing *Goldenberg v. Marriot PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998); *see also Jones v. Dominion Resources Services, Inc.,* 601 F. Supp. 2d 756, 758 (2009) (collecting cases in the Fourth Circuit for the proposition that the percentage method has "overwhelmingly" become the preferred method for calculating fees in common fund cases). The percentage of the fund method calculation is preferred because it "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys" and it allows courts to reward counsel for the "efficient settlement of a case." *Jones,* 601 F. Supp. 2d at 759.

In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Devine v. City of Hampton, Virginia,* No. 4:14cv81, 2015 WL 10793424, at * 3 (E.D. Va. Dec. 1, 2015). In *Winingear,* the Court permitted Plaintiffs' Counsel to recover 35% of the settlement fund in a hybrid FLSA and Rule 23 action, which was a 1.6 multiplier of

counsel's lodestar. The court deemed the fee reasonable because plaintiffs signed contingency fee arrangements providing counsel with 40% of the recovery, the court had "routinely" approved fee recoveries around 40% percent in other FLSA litigation, the prosecution of the action required extensive discovery and research into the exemptions at issue, plaintiffs' counsel had an excellent reputation, and officers would be receiving an average award of over $2,000. *Winingear,* 2014 WL 3500996, at *6-7.

Here, the Named Plaintiff signed a fee agreement granting Plaintiffs' Counsel a 40% interest in the gross amount recovered. Ex. 2, Hedgpeth Decl. ¶ 42. Plaintiffs' Counsel have voluntarily reduced their fee and seek $33^{1/}3\%$ of the Gross Settlement Amount, or $116,666. Ex. 1, Joint Stipulation, § 5(a)(i); Ex. 2, Hedgpeth Decl. ¶ 43. This reduced percentage aligns with the amounts other district courts in this circuit have awarded using the percentage of the fund recovery method in FLSA litigation. *See Hall v. Dominion Energy, Inc.,* Case No. 3:18-cv-321 (E.D. Va. August 22, 2019), ECF No. 90 (approving attorneys' fees in the amount of 35% of a $3,800,000 common fund in a FLSA collective action); *Wright v. Pendleton v. City of Roanoke, Virginia,* Case No. 7:18-cv-210 (W.D. Va. June 28, 2019), ECF No. 47 (approving attorneys' fees and costs in the amount of 33.33% of a $1,200,000 common fund in a FLSA collective action); *Devine,* 2015 WL 10793424, at * 3 (approving attorneys' fees and costs in the amount of 33.98% of the $3,500,000 common fund in a FLSA collection action); *Winingear v. City of Norfolk,* No. 2:12cv560, 2014 WL 3500996 (E.D. Va. July 14, 2014) (approving attorneys' fees in the amount of 35% of the $3,200,000 common fund in combined Rule 23 and FLSA collective action).

### B.    A Lodestar Cross Check Demonstrates Plaintiffs' Counsel's Request for Fees is Reasonable

When performing a cross-check of the reasonableness of the lodestar, courts weigh the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the

questions raised; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client, and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978). There is no strict manner in which these factors are to be considered and applied, and a court is not obligated to examine factors that do not apply. *LaFleur v. Dollar Tree Stores, Inc.,* 189 F. Supp. 3d 588, 595 (E.D. Va. 2016) (Jackson, J.).

### 1.    Lodestar Amount and Time and Labor Expended (Hensley Factor 1)

Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320-21 (4th Cir. 2008). The reasonable time Plaintiffs' Counsel has expended in litigating this collective action, and the reasonable rates for that work, are as follows:

| Timekeeper | Rate | Total Hours | Fees |
|---|---|---|---|
| Travis M. Hedgpeth | $500 | 144.30 | $72,150.00 |
| Jack L. Siegel | $500 | 14.50 | $7,250.00 |
| Harris D. Butler, III | $550-600 | 2.00 | $1,150.00 |
| Zev Antell | $375-475 | 26.30 | $12,082.5 |
| Paul M. Falabella | $315-425 | 1.20 | $488.00 |
| Paralegals | $135 | 26.90 | $3,631.50 |
| **Total** | | | **$ 96,752** |

Ex. 2, Hedgpeth Decl. ¶¶ 38-39; Ex. 3, Siegel Decl. ¶ 9; Ex. 4, Antell Decl. ¶ 15. The time provided above eliminates the time attorneys spent performing clerical tasks, eliminates a significant portion of time co-counsel spent conferring with each other about the case, and does not take into

consideration additional time Plaintiffs' Counsel will spend seeking approval of the Settlement, and if approved, fulfilling their obligations under the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Class Notice and Settlement Payments, and responding to Settlement Class Members' inquiries. Ex. 2, Hedgpeth Decl. ¶ 38.

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). The rates sought by Plaintiffs' Counsel here are less than the hourly rates they have been awarded by courts in other wage and hour actions. Ex. 2, Hedgpeth Decl. ¶ 40 . Plaintiffs' Counsel reduced their hourly rates to align their rates within those charged in this District. Ex. 2, Hedgpeth Decl. ¶ 40-41; Ex. 3, Siegel Decl. ¶10.

### 2.    The Results and Benefits Conferred Upon the Settlement Class Justify the Requested Award (Factor No. 8)

The results obtained for class members is often considered the most important factor in determining the reasonableness of a fee award. *Jones,* 601 F. Supp. 2d at 761. This factor weighs in favor of approving the fee request in light of the excellent result Plaintiffs' Counsel obtained for Settlement Class Members. The Settlement is a non-claims made settlement. Ex. 2, Hedgpeth Decl. ¶ 30. All Settlement Class Members will receive a check via U.S. Mail, with no pre-conditions, representing their *pro rata* share of the Net Settlement Amount based on the addition of 5 work hours in each and every week they worked during the class period.

The relief that Settlement Class Members will receive is outstanding. The Gross Settlement Account compensates Class Members for 115% of the overtime wages allegedly owed to them if 5 additional hours were added to each and every week they worked during the class period. Even after the payment of Plaintiffs' Attorneys Fees, Litigation Expenses, and Participation Payments, Class Members who cash their Settlement payments will receive 72% of the overtime wages

computed to be owed to them under the Settlement. The average Class Member Settlement Payment is over $3,100. Ex. 2, Hedgpeth Decl. ¶ 34. This is an exceptional result by any measure inasmuch as Defendants vigorously disputed that they misclassified Plaintiffs and Settlement Class Members as exempt, disputed that Plaintiffs and Settlement Class Members worked more than forty (40) hours a week, disputed the appropriateness of liquidated damages, disputed the application of a three year limitations period, and disputed that a collective action could be maintained through trial.

Plaintiffs' Counsel also negotiated a favorable release for Settlement Class Members. Any claim a Settlement Class Member may have other than those in this lawsuit will remain unaffected, and all Settlement Class Members who have not already opted into the case and who do not cash their Settlement Payment checks will not release any of their claims against Defendants. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

### 3.    The Novelty and Difficulty of the Questions Raised (Factor No. 2)

Plaintiffs' claims are not simple claims for owed overtime wages. Plaintiffs, licensed registered nurses, worked remotely away from Defendants' place of business. Plaintiffs faced challenges in defeating the professional, administrative, and combination/hybrid exemption defenses Defendants raised and in proving the number of hours they worked in the absence of time records. The Parties would have been required to engage in costly electronic discovery bearing on the job duties Plaintiffs and Settlement Class Members performed, the level of supervision they were subjected to, and the hours they worked.

4. **The Experience, Reputation and Ability of the Attorneys and the Skills Required to Properly Perform the Legal Services Rendered (Factor Nos. 3 and 9)**

Plaintiffs' Counsel's fees are justified by their experience not only in wage and hour cases generally, but in representing care management employees specifically. As described in Section IV(B)(4), *supra*, and the declarations Counsel submitted in support of this motion, Plaintiffs' Counsel are well qualified to represent Plaintiffs.

Plaintiffs' Counsel obtained a favorable result in an efficient manner, but had this case not resolved, Plaintiffs' Counsel would have been prepared to litigate this matter through trial. Ex. 2, Hedgpeth Decl. ¶ 44. Plaintiffs' Counsel have the skill and experience necessary to perform the significant discovery needed to pursue the collective action and to oppose the motion for summary judgment and motion for decertification that Defendant would have likely filed.

5. **Customary Fee for Like Work, Attorneys' Expectation at the Outset, and Attorneys' Fees Awards in Similar Cases (Hensley Factor 5, 6 and 12)**

Prior to filing the Complaint, Plaintiffs' Counsel executed fee agreements with the Named Plaintiff that entitled Plaintiffs' Counsel to forty (40%) of any recovery. Ex. 2, Hedgpeth Decl., ¶ 42. The Court, therefore, knows the amount negotiated in the marketplace at the outset of the case. Plaintiffs' Counsel accepted this case on a contingency fee basis, and they assumed a significant degree of risk that they would receive *no* fee for their services. Ex. 2, Hedgpeth Decl. ¶ 44; *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 569 (7th Cir. 2000) ("The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent."). Plaintiffs' Counsel faced risk in maintaining certification of the claims through trial and risk on prevailing on the merits of the claims.

As discussed in Section V(A) *supra,* Plaintiffs' Counsel's request for 33 $^1/_3$% of the common fund is consistent with the percentage of the fund awarded in comparable wage and hour litigation. The request results in a 1.2 multiplier, which is within the range of multipliers district courts have found to be reasonable. *In re The Mills Corp. Securities Litigation,* 265 F.R.D. 246, 265 (E.D. Va. 2009) ("courts 'have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee'") citing *Jones v. Dominion Resources Services, Inc.,* 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009).

Based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members, Plaintiffs' Counsel's request for 33 $^1/_3$% of the Gross Settlement Amount is reasonable.

### C.      Plaintiffs' Litigation Expenses

The Settlement provides that Plaintiffs' Counsel may apply to the Court for payment of costs and expenses up to $3,431.63 to be paid from the Settlement Fund. Plaintiffs' Counsel seek reimbursement of costs in the amount $3,431.63. These costs were incurred for Court fees and lodging, transportation, airfare and other travel costs to attend the mediation in Norfolk, Virginia. *See* Ex. 2, Hedgpeth Decl. ¶ 45 and Ex. 4, Antell Decl. ¶ 18, detailing the costs incurred in this case.

Plaintiffs' Counsel's request for reimbursement of $3,431.63 in costs is appropriate because these costs and expenses were necessarily incurred in order to litigate and settle this case and because Plaintiffs' Counsel exercised care in minimizing the costs they incurred in this case. Ex. 2, Hedgpeth Decl. ¶ 46.

## VI.    <u>THE REQUESTED SERVICE AWARDS ARE REASONABLE</u>

The Settlement provides for Service Awards to Named Plaintiff Nikia Edwards in the amount of $7,500 and to each Opt-in Plaintiff in the amount of $1,000 to acknowledge their service to the Settlement Class Members. Ex. 1, Joint Stipulation of Settlement, § 9(d)-(e). This payment is in addition to any payment they will receive as their *pro rata* share of the Net Settlement Amount.

Named plaintiffs in collective or class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

The Service Awards sought here are in recognition of the Named Plaintiff's efforts in pursuing the claims raised in this Action on behalf of the Settlement Class Members. Ex. 2, Hedgpeth Decl. ¶¶ 35-36. Plaintiff Edwards provided factual information and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation. *Id.* ¶ 35. She filed this suit knowing that future employers may not hire her because she filed a lawsuit against a former employer. *Leigh v. Bottling Group, LLC,* No. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012). The incentive award is designed to compensate her for taking on such a risk. *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012).

Plaintiffs seek lesser awards for the Opt-in Plaintiffs who also provided a great service to Settlement Class Members. By joining the case, the Opt-in Plaintiffs increased Plaintiff Edwards'

chance of success in obtaining conditional certification. Ex. 2, Hedgpeth Decl. ¶ 36. The Opt-in Plaintiffs also provided information and documents necessary to allow Plaintiffs to achieve a successful resolution of the case.  *Id.*

Courts in this Circuit and others have approved incentive awards for similar activities. *Hall v. Dominion Energy, Inc.,* Case No. 3:18-cv-321 (E.D. Va. August 22, 2019), ECF No. 90 (approving $15,000 service award to Named Plaintiff and $5,000 service award to Opt-in Plaintiff in FLSA collective action); *Wright v. Pendleton v. City of Roanoke, Virginia,* Case No. 7:18-cv-210 (W.D. Va. June 28, 2019), ECF No. 47 (approving a total of $8,000 in service payments to two named plaintiffs in FLSA action). In total, the $10,500 in service awards to the seven Plaintiffs amount to 3% of the Gross Settlement Amount which is a reasonable percentage. *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 384 (W.D.N.Y. 2016) (approving service awards of $15,000 to each of four named plaintiffs, representing "approximately three percent of the total settlement fund" in hybrid FLSA and state law overtime case); *Davis v. Uhh Wee, We Care Inc.*, 2020 WL 6746475, at *2 (D. Md. Nov. 17, 2020), *appeal dismissed sub nom. Davis v. Murray*, 2021 WL 4240379 (4th Cir. Sept. 17, 2021) (rejecting service award of 15% of total fund and approving instead service award of 5% of total fund in FLSA case).

## VII.    <u>CONCLUSION</u>

This Settlement is a result of contested litigation and was reached after extensive settlement negotiations with an experienced mediator. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Settlement Class Members with significant monetary relief. Because the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, it should be approved.

Dated:  October 5, 2020                    Respectfully submitted,

                                    */s/ Zev H. Antell*
                                    One of the Attorneys for Plaintiffs

Harris D. Butler, III (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Paul M. Falabella (VSB No. 81199)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: (804) 648-4848
harris@butlercurwood.com
zev@butlercurwood.com
paul@butlercurwood.com

Jack Siegel
SIEGEL LAW GROUP PLLC
5706 E. Mockingbird Lane | Suite 115
Dallas, Texas 75206
Tel: (214) 790-4454
jack@siegellawgroup.biz

Travis Hedgpeth
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Tel: (281) 572-0727
travis@hedgpethlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October 2021, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>David A. Kushner   (VSB No. 71173)
>William M. Furr   (VSB No. 29554)
>Caine J. Caverly   (VSB No. 96115)
>WILLCOX & SAVAGE, P.C.
>440 Monticello Avenue, Suite 2200
>Norfolk, VA 23510
>Tel: 757-628-5500
>Fax: 757-628-5566
>Email:  dkushner@wilsav.com
>             wfurr@wilsav.com
>             ccaverly@wilsav.com

>*Attorneys for Defendants*

>*/s/  Zev H. Antell*
>Zev H. Antell (VSB No. 74634)
>BUTLER CURWOOD, PLC
>140 Virginia Street, Suite 302
>Richmond, Virginia 23219
>Tel: (804) 648-4848
>zev@butlercurwood.com

29